# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| ABDUL QUBADI,<br><br>   Plaintiff,<br><br> v.<br><br>JOSEPH M HACKBARTH,<br><br>   Defendant. | CV 17-06286 TJH (MRWx)<br><br>Order<br>and<br>Judgment<br>JS-6 |

  The Court has considered the parties' cross motions for summary judgment, together with the moving and opposing papers.

  On August 24, 2017, Plaintiff Abdul Qubadi filed this action, pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* ["APA"], seeking judicial review of a final agency determination that he was an enemy combatant and, therefore, ineligible for permanent resident status. Qubadi filed this action against Defendant Joseph Hackbarth, the Field Office Director of the United States Citizenship and Immigration Services' San Fernando Valley Field Office.

  Qubadi was born in Afghanistan in 1974. According to the Certified Administrative Record ["CAR"], Qubadi, his mother, and one of his brothers moved to the United States in 1990. On September 8, 1995, Qubadi applied for asylum.

In his asylum application, Qubadi acknowledged that he was involved with the Afghan Mujahideen, a group that Qubadi characterized as "resistence fighters," who fought against the then-Soviet Union after the Soviets invaded Afghanistan. Qubadi stated, in his asylum application, that he was a member of the Mujahideen from 1985 to 1989, when he was 11 to 15 years old, and that his responsibilities included cleaning dishes, cleaning weapons, and transporting food, medicine, and weapons to other Mujahideen members. During his asylum application interview with an unidentified Immigration and Naturalization Service officer, Qubadi, supposedly, mentioned an instance where he, his brother, and a group of Mujahideen fighters were involved in "cross fire" with a Soviet tank ["the Tank Incident"]. On February 8, 1996, the interviewing officer prepared a formal report, recommending that Qubadi's asylum application be granted. Thereafter, Qubadi was granted asylum.

Beginning in 1997, Qubadi has filed three I-485 Applications to Register Permanent Resident or Adjust Status ["I-485"]. There is no statutory or regulatory limit to the number of I-485's that a person can file, as long as the filing fee is paid with each application. To obtain permanent resident status, an applicant must submit an I-485 and be deemed "admissible" into the United States, even if he already resides in the United States. *See* 8 U.S.C. § 1257.

Whether an individual is admissible into the United States is governed by 8 U.S.C. § 1182. An individual is not admissible if he, *inter alia*: (1) Engaged in terrorist activity, which includes, *inter alia*, using an explosive, firearm, or other weapon or dangerous device with the intent to endanger, directly or indirectly, the safety of one or more individuals or caused substantial damage to property, *see* 8 U.S.C. § 1182(a)(3)(B)(i)(I), (a)(3)(B)(iii)(V)(b); or (2) Committed an act that he knew, or reasonably should know, afforded material support to a terrorist organization, *see* 8 U.S.C. § 1182(a)(3)(B)(ic)(VI)(dd).

Qubadi filed his first I-485 on April 28, 1997. That application was denied as an exercise of discretion. Qubadi filed his second I-485 on September 1, 2009. That

application was denied on October 10, 2013, with a finding that Qubadi was not admissible because he engaged in terrorist activities – when he fired a gun at a Soviet tank during the Tank Incident, *see* 8 U.S.C. § 1182(A)(3)(B)(iii)(V)(b) – and because he knowingly, or reasonably should have known that he, afforded material support to a terrorist organization by cleaning dishes, cleaning weapons, and transporting food, medicine, and weapons for the Mujahideen, *see* 8 U.S.C. § 1182(a)(3)(B)(ic)(VI)(dd).

On August 12, 2014, Qubadi sought judicial review, pursuant to the APA, of the October 10, 2013, denial. *See Qubadi v. Hazuda*, CV 14-06310-MMM (PJWx). On August 10, 2015, District Judge Margaret Morrow held that the denial was proper because, *inter alia*, Qubadi had provided material support to a terrorist organization.

On May 12, 2016, Qubadi filed his third I-485. In support of that application, Qubadi submitted, for the first time, four declarations from individuals, who lived in Kabul during the Soviet occupation, stating that they did not know, nor could they have known, that the Mujahideen was a terrorist organization ["the Declarations"] because, in part, it was widely believed, at the time, that the United States supported the Mujahideen. Qubadi's third application was, again, denied because Qubadi had: (1) Engaged in terrorist activities by shooting a gun at a Soviet tank during the Tank Incident; (2) Knowingly, or reasonably should have known that he, provided material support to a terrorist organization; and (3) Disqualifying criminal convictions that he failed to adequately dispute with substantial evidence.

As to the third reason for denial – the disqualifying criminal conviction – the Government attributed to Qubadi arrests and convictions of a person named Sayed Abdullah Qubadi, including a September 2, 1998, arrest for annoying or molesting a child. Qubadi denied that he was the person arrested or charged. Pursuant to the Government's request for documentary support, Qubadi provided a name search report for Sayed Abdulla Qubadi, which identified a birthday for Sayed Abdulla Qubadi that was not Qubadi's birthday. The Government concluded that because the criminal record of Sayed Abdulla Qubadi was linked to Qubadi's identity, and because Qubadi

did not provide any evidence that he did not use a different name or date of birth at the time of the arrests at issue, the name search report was, without more, insufficient to establish that Qubadi's criminal record did not render him inadmissible.

In 2017, Qubadi initiated this judicial review of the Government's denial of his third I-485. In an attempt to resolve this matter, the parties engaged in settlement negotiations with Magistrate Judge Michael Wilner. During those negotiations, the parties agreed that the determinative issue, here, is whether the Government properly determined that Qubadi engaged in terrorist activities in connection with the Tank Incident. Consequently, the parties filed cross motions for partial summary judgment limited to that issue. On August 27, 2019, the Court held that the Government lacked substantial evidence to support its finding that Qubadi engaged in terrorist activities in connection with the Tank Incident and, therefore, that finding was arbitrary and capricious. Accordingly, it granted Qubadi's motion for partial summary judgment, and denied the Government's motion.

Thereafter, the parties were unable to resolve the two remaining issues – whether the Government properly determined that: (1) Qubadi knowingly, or reasonably should have known that he, provided material support to a terrorist organization; and (2) Qubadi failed to adequately dispute his disqualifying criminal convictions with substantial evidence.

The parties, now, again, each move for partial summary judgment.

Under the APA, the Court may set aside a final agency decision if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 5 U.S.C. § 706(2)(A). The decision must have been based on a "rational connection between the facts found and the choices made." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010). The Court must review the Government's factual findings based on the substantial evidence standard. *Family Inc. V. United States Citizenship and Immigration Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006). The substantial evidence standard is deferential and the Court "may not

substitute its judgment for that of the agency concerning the wisdom or prudence of the agency's action." *See River Runners*, 593 F.3d at 1070.

If the Court concludes that a final agency decision was arbitrary, capricious, or otherwise not in accordance with the law, the appropriate remedy is vacatur of the unlawful agency decision and remand to the agency with instructions to reconsider its decision. *See All. for the Wild Rockies, United States Forest Servs.*, 907 F.3d 1105, 1121 (9th Cir. 2018).

**Preclusion**

As a threshold matter, the Government argued that Judge Morrow's August 10, 2015, decision precludes this Court from determining of whether the Government properly determined that Qubadi knew, or reasonably should have known, that he was providing material support to a terrorist organization. The Government argued that Qubadi should not be allowed to "relitigate this issue by re-filing his I-485 application over and over until he gets the result he seeks."

Judge Morrow's decision was based on a review of the Government's denial of Qubadi's *second* I-485. This Court is, now, reviewing the Government's denial of Qubadi's *third* I-485. The Government's second and third denials were each separate and distinct denials. Indeed, the third denial at issue, here, is wholly self-contained – the Government did not predicate the third denial on either the first or second denial. Moreover, the Government pointed to no authority– and the Court could find none – that limits the number of I-485 applications an applicant may file or that precludes review of a subsequent I-485 based on a decision reached for a previous I-485.

Accordingly, Judge Morrow's decision does not preclude this Court's review of the Government's denial of Qubadi's third I-485.

**Material Support to a Terrorist Organization**

The United States categorizes terrorist organizations into three tiers, with Tier I being the most dangerous. Unlike with Tier I and Tier II terrorist organizations, providing material assistance to a Tier III terrorist organization does not automatically

render an individual inadmissible. *See Khan*, 766 F.3d at 691-692  Rather, the applicant must know, or reasonably should have known, that he was providing material assistance to a terrorist organization. *See Khan*, 766 F.3d at 691-692. If the applicant can show by clear and convincing evidence that he lacked the requisite knowledge, the applicant is not inadmissible. *See Khan*, 766 F.3d at 691-692.

A Tier III terrorist organization is "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in terrorist activities." 8 U.S.C. § 1182(a)(3)(B)(vi)(III). Terrorist activity is "any activity which is unlawful under the laws of the place where it is committed." 8 U.S.C. § 1182(a)(3)(B)(iii). Those definitions, when applied to certain factual situations, can result in a quagmire. For example, Ninth Circuit Court of Appeals Judge Dorothy Nelson noted in a concurrence in *Khan v. Holder*, 584 F.3d 773 (9th Cir. 2009), that because the United States's "invasions of Afghanistan and Iraq were indisputably 'unlawful' under the domestic laws of those countries," the United States military could, under the above definitions, be considered a Tier III terrorist organization, and any individual or group that lent aid to the United States military would, therefore, be deemed inadmissible. *See Khan*, 584 F.3d at 787.

The Government, now, categorizes the Mujahideen as a Tier III terrorist organization. The Government refers to the Mujahideen as "the blanket term applied to the various armed groups in Afghanistan which fought against the Soviet army from the invasion of 1979 until the Soviet withdrawal was completed in February 1989." In support of its Tier III categorization of the Mujahideen, the Government noted that an estimated 25,000 people have been killed by the Mujahideen since April, 1992.

Qubadi does not challenge the Government's current categorization of the Mujahideen as a Tier III terrorist organization, or that he provided material assistance to the Mujahideen from 1985 to 1989. However, Qubadi maintains that he did not know, nor should he have had reason to know, during that time period, given his age and the beliefs of other Afghans at the time, that the Mujahideen was a terrorist

organization.

In denying Qubadi's third I-485 application, the Government concluded that, *inter alia*: (1) Qubadi had not "shown by sufficient evidence that [he] did not know that Mujahideen was a terrorist organization," especially given his involvement in the Tank Incident; and (2) Qubadi had not established that any of the Declarations were written by a declarant with expertise in the designation of terrorist organizations.

The Government's determination that Qubadi knowingly assisted a terrorist organization was influenced by its conclusion that Qubadi was involved in the Tank Incident. However, this Court held, in its order regarding the first set of cross motions for partial summary judgment, that the Government's conclusion that Qubadi was involved in the Tank Incident was not based on substantial evidence and, therefore, was, arbitrary and capricious. Thus, the Government's continued reliance on that unsubstantiated conclusion lacks substantial evidence.

Further, the Government failed to fairly consider the Declarations based on its misplaced conclusion that the declarants had not "establish[ed] their expertise regarding Tier III designation." But Qubadi did not contest the Tier III designation and, indeed, the Declarations were not submitted to challenge the Mujahideen's current designation. Rather, Qubadi submitted the Declarations, and his own declaration, to support his contention that he did not know, nor should he have been reasonably expected to know, that the Mujahideen was a terrorist organization, at the time, when other Afghans were, also, under the impression that it was not. Thus, the Government failed to adequately consider Qubadi's evidence.

In sum, the Government's conclusion that Qubadi knew, or reasonably should have known, that he was providing material assistance to a terrorist organization was not based on substantial evidence and, therefore, was arbitrary and capricious.

**Criminal History**

The Government concluded that Qubadi failed to adequately dispute, with substantial evidence, what the Government labeled to be disqualifying criminal

convictions. Thus, the Government deemed Qubadi to be inadmissible.

As an initial matter, the Government required Qubadi to prove a negative as to the issue of disqualifying criminal convictions. "As a practical matter it is never easy to prove a negative. For this reason, fairness and common sense often counsel against requiring a party to prove a negative fact." *See United States v. Cortz-Rivera*, 454 F.3d 1038, 1041-1042 (9th Cir. 2006).

The Government argued that the name search report submitted by Qubadi was insufficient and required additional evidence because Qubadi could have provided the arresting officers with a fake identity. The Government's argument is nonsensical. When presented with Qubadi's evidence – that he submitted in an attempt to prove the negative – the Government unreasonably discounted it and required additional evidence to further attempt to prove a negative.

The Court finds that the Government did not establish, with substantial or other evidence, that the disqualifying criminal convictions, indeed, belonged to Qubadi. The Court, further, finds, that Qubadi set forth reasonable and substantial evidence to establish that he is not the same person as Sayed Abdullah Qubadi. The Government's determination was, again, without substantial evidence and was, therefore, arbitrary and capricious. Consequently, the United States Citizenship and Immigration Services' decision must be vacated and remanded for reconsideration.

Accordingly,

𝔍𝔱 𝔦𝔰 𝔒𝔯𝔡𝔢𝔯𝔢𝔡 that Qubadi's second motion for partial summary judgment be, and hereby is, 𝔊𝔯𝔞𝔫𝔱𝔢𝔡.

𝔍𝔱 𝔦𝔰 𝔣𝔲𝔯𝔱𝔥𝔢𝔯 𝔒𝔯𝔡𝔢𝔯𝔢𝔡 that the Government's second motion for partial summary judgment be, and hereby is, 𝔇𝔢𝔫𝔦𝔢𝔡.

**It is further Ordered, Adjudged, and Decreed** that the United States Citizenship and Immigration Services' conclusions that Qubadi knowingly, or reasonably should have known that he, provided material support to a Tier III terrorist organization, and that he failed to provide sufficient evidence to establish that he was free from any disqualifying criminal convictions, were not based on substantial evidence and were, therefore, arbitrary and capricious.

**It is further Ordered, Adjudged, and Decreed** that the United States Citizenship and Immigration Services' denial of Qubadi's third I-485 application be, and hereby is, **Vacated**.

**It is further Ordered** that this matter be, and hereby is, **Remanded** to the United States Citizenship and Immigration Services for reconsideration of Qubadi's third I-485 application.

Date: October 8, 2020

_____
**Terry J. Hatter, Jr.**
Senior United States District Judge